Venkat Balasubramani (SBN 189192)
Sean M. McChesney (admitted *pro hac vice*)
FOCAL PLLC
800 Fifth Ave., Suite 4100
Seattle, WA 98104
Phone: (206) 529-4827
Fax: (206) 260-3966
venkat@focallaw.com
sean@focallaw.com

Attorneys for Defendant
WHITEPAGES, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREL L. ESPINOSA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WHITEPAGES, INC., a Delaware corporation; and PARTIES UNKNOWN, inclusively,<br><br>Defendants. | Case No. 14:2 CV 2829 MCE ERB PS<br><br>**WHITEPAGES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Date:       March 19, 2015<br>Time:       2:00 p.m.<br>Courtroom: 7, 14th Floor<br>Judge:     Morrison C. England, Jr. |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................................1

BACKGROUND ..................................................................................................................................2

      A.     Background about Whitepages ........................................................................................2

      B.     The Allegations of the Second Amended Complaint ..............................................3

      C.     This Court Has Determined That Mr. Espinosa Is a Vexatious Litigant—and
            Mr. Espinosa Disobeyed This Court's Order When He Filed This Lawsuit ...................4

DISCUSSION .......................................................................................................................................4

      A.     Legal Standard.................................................................................................................4

      B.     Espinosa's Claim for Right of Publicity Fails Because He Does Not Allege
            any Commercial Use by Whitepages; any such Use is in Any Event Clearly
            Protected .......................................................................................................................5

               1.     Mr. Espinosa fails to allege a prima facie claim...........................................5

               2.     Any use in a directory must be considered "incidental use"........................6

               3.     Listing Mr. Espinosa's name falls under the public affairs exception ...........7

      C.     Espinosa's Second Claim for Violation of Constitutional Privacy Rights Fails Because
            Whitepages' Publication of his Name, Address and Phone Number Is Not Actionable..........7

      D.     Whitepages is Entitled to Section 230 Immunity ...................................................9

      E.     Espinosa Does Not Allege that Whitepages Agreed to His
            Licensing Agreement....................................................................................................11

      F.     The Court Should Dismiss With Prejudice .........................................................12

CONCLUSION ...................................................................................................................................12

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................... 5

*Black v. Google Inc.*,
  No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905 (N.D. Cal. Aug. 13, 2010) ............................ 11

*Blumenthal v. Drudge*,
  992 F. Supp. 44, 51 (D.D.C. 1998) ............................................................................................. 10

*Brayshaw v. City of Tallahassee*,
  709 F. Supp. 2d 1244, 1248-49 (N.D. Fla. 2010) ......................................................................... 7

*Chaset v. Fleer/Skybox Int'l*,
  LP, 300 F.3d 1083, 1088 (9th Cir. 2002) .................................................................................... 12

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031, 1038 (9th Cir. 2010) ............................................................................................. 2

*Dex Media W., Inc. v. City of Seattle*,
  696 F.3d 952, 957 (9th Cir. 2012) ................................................................................................. 7

*Dimeo v. Max*,
  433 F. Supp. 2d 523, 532 (E.D. Pa. 2006) .................................................................................. 12

*Doe v. MySpace, Inc.*,
  474 F. Supp. 2d 843 (W.D. Tex. 2007) ....................................................................................... 11

*Donato v. Moldow*,
  374 N.J. Super. 475 (App. Div. 2005) ......................................................................................... 11

*Dora v. Frontline Video, Inc.*,
  15 Cal. App. 4th. 536, 545-46 (Cal. Ct. App. 1993) ..................................................................... 7

*Eastwood v. Superior Court*,
  149 Cal. App. 3d 409, 417 (Cal. Ct. App. 1983) .......................................................................... 5

*Espinosa v. Marshall*,
  No. CIV S-06-1192 MCE GGH PS (E.D. Cal. 2007) .......................................................... 1, 4, 13

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157, 1170 (9th Cir. 2008) (en banc) .......................................................................... 10

*Fogelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986, 992, 125 Cal. Rptr. 3d 260 (Cal. Ct. App. 2011) ..................................... 8

*Gavra v. Google Inc.*,
  Case No.: 5:12-CV-06547-PSG, 2013 U.S. Dist. LEXIS 100127, *9 (N.D. Cal. July 17, 2013) ................. 12

*Hill v. Nat'l Collegiate Athletic Ass'n*,
  7 Cal. 4th 1, 35-37, 26 Cal. Rptr. 2d 834 (Cal. 1994) ............................................................... 7, 8

*In re Google, Inc. Privacy Policy Litig.*,
  2014 U.S. Dist. LEXIS 100245, *38 (N.D. Cal. July 21, 2014) ..................................................... 9

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040, 1063 (2012) ............................................................................................... 8

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014) .................................................................................. 8

*Johnson v. Harcourt, Brace, Jovanovich, Inc.*,
  43 Cal. App. 3d 880, 895 (Cal. Ct. App. 1974) ......................................................................... 5, 6

*Kirby v. Sega of America, Inc.*,
  144 Cal. App. 4th 47, 63 (Cal. Ct. App. 2006) ............................................................................. 5

*Knievel v. ESPN*,
  393 F.3d 1068, 1076 (9th Cir. 2005) ............................................................................................. 2

*Loder v. City of Glendale*,
  14 Cal. 4th 846, 893, 59 Cal. Rptr. 2d 696 (Cal. 1997) ............................................................... 8

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) .............................................................................. 8
*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025, 1031 (9th Cir. 2008) ............................................................................................ 5
*McNutt v. N.M. State Tribune Co.*,
  88 N.M. 162, 166 (N.M. Ct. App. 1975) ...................................................................................... 9
*Miller v. Vonage Am., Inc.*,
  No. 14-CV-379, 2015 U.S. Dist. LEXIS 308, 18 (E.D. Wis. Jan. 5, 2015) ................................. 9
*Nasser v. Whitepages, Inc.*,
  No.: 5:12cv097, 2013 U.S. Dist. LEXIS 166133, *9 (W.D. Va. Nov. 21, 2013)......................... 10
*Navarro v. Block*,
  250 F.3d 729, 732 (9th Cir. 2001) ................................................................................................ 4
*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  564 F. Supp. 2d 544, 548 (E.D. Va. 2008), *aff'd*, 591 F.3d 250 (4th Cir. 2009)........................ 9
*Perkins v. LinkedIn Corp.*,
  2014 U.S. Dist. LEXIS 160381, 64-65 (N.D. Cal. Nov. 13, 2014)............................................... 6
*Prickett v. Infousa, Inc.*,
  561 F. Supp. 2d 646, 651 (E.D. Tex. 2006)................................................................................... 10
*Ramey v. Darkside Prods.,*
  No. 02-730 (GK), 2004 U.S. Dist. LEXIS 10107 (D.D.C. May 17, 2004) ................................. 11
*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121, 1127-28 (N.D. Cal. 2008)......................................................................... 8
*Scott-Codiga v. County of Monterey*,
  No. 10-CV-05450-LHK, 2011 U.S. Dist. LEXIS 108721, at *7 (N.D. Cal. Sept. 23, 2011)........ 9
*Taylor v. NationsBank N.A.*,
  128 Md. App. 414 (Md. Ct. Spec. App. 1999) .............................................................................. 9
*Yeager v. Cingular Wireless LLC*,
  673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009) .............................................................................. 6
*Zbitnoff v. Nationstar Mortg. LLC*,
  No. C 13-05221 WHA, 2014 U.S. Dist. LEXIS 35638, at *4 (N.D. Cal. March 18, 2014).......... 9

**Statutes**

Cal. Civil Code § 3344 ................................................................................................................ 2, 5
Communications Decency Act Section 230, 47 U.S.C. § 230 ...................................................Passim
FRCP 12(b)(6)................................................................................................................................ 4

**Other Authorities**

Annotation, *Publication of Address as well as Name of Person as Invasions of Privacy*, 84 A.L.R.3d 1159.... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In his Second Amended Complaint ("SAC", Dkt. 8), Plaintiff Darrel Espinosa alleges vague privacy claims against Whitepages, Inc., a Washington-based online directory services company.[1] Mr. Espinosa—who this Court has previously determined to be a vexatious litigant in two previous lawsuits—claims that Whitepages is an agent of foreign governments who sells Mr. Espinosa's personal information to enemies of the United States. (SAC ¶ 17.) He never identifies any personal information that Whitepages allegedly exploits, or any advertising Whitepages engages in that utilizes his likeness. His allegations fail to state a claim.

When he filed this lawsuit, Mr. Espinosa violated this Court's previous order in *Espinosa v. Marshall*, No. CIV S-06-1192 MCE GGH PS (E.D. Cal. 2007) (Dkt. 92) (attached as <u>Exhibit D</u> to the Declaration of Sean M. McChesney ("McChesney Decl."), filed concurrently with the Motion). In its order, the Court imposed certain requirements on any future lawsuit initiated by Mr. Espinosa:

> Plaintiff shall not initiate any further pro se action in this court unless the pleadings initiating the action are accompanied by a declaration under penalty of perjury that explains why plaintiff believes he has meritorious claims. The declaration shall include a list of all previous actions plaintiff has filed in this or any court, identifying named defendants and all claims made in the previous actions... The declaration shall also state that the claims are not frivolous or made in bad faith, and that plaintiff has conducted a reasonable investigation of the facts and the investigation supports his claim(s). Finally, a copy of this order shall be attached to any application . . .

*Id*. at 2:9-18. Mr. Espinosa did not file the required declaration in this case. He purposefully concealed from this Court his history of wasting the time and resources of both the Court and numerous defendants. And, he will find it impossible to explain how his spying allegation—or any of his other allegations of wrongdoing by Whitepages—is anything less than frivolous.

Whitepages does not have any relationship with Mr. Espinosa, and merely publishes his

---

[1] Mr. Espinosa filed the original complaint on December 4, 2014 (Dkt. 1). He filed a first amended complaint (the "FAC") on December 29, 2014 (Dkt. 4). Whitepages filed a statement of non-opposition to the amendment of the FAC (Dkt. 16). Accordingly, this motion addresses the claims in the SAC.

1 name, address and telephone number—just as a standard telephone directory would—as part of its

2 customer-facing online directory that it makes available to the public for free. Mr. Espinosa fails to

3 state a claim under Cal. Civil Code § 3344 because he does not allege, nor could he, that including

4 Mr. Espinosa's name and contact information in an informational directory such as a phone book is

5 "advertising" covered by § 3344. He similarly does not allege a direct connection between

6 Whitepages' use of his name (or other "personal information") and a commercial purpose. His

7 claim under the California Constitution is likewise deficient because courts have uniformly held

8 that use or disclosure of the type of information displayed by Whitepages fails to state a claim for

9 invasion of privacy under the California Constitution. Separately, Mr. Espinosa's claims are also

10 barred by Section 230 of the Communications Decency Act. Whitepages' directory is comprised

11 exclusively of third party-provided information, and as such, all state law claims are shielded by

12 Section 230. Finally, Mr. Espinosa's contract claim is also fundamentally deficient—he alleges that

13 he has created licensing agreements governing the use of his personal information, but admits that

14 Whitepages did not enter into any such agreements.

15 **BACKGROUND**

16 **A.      Background about Whitepages**[2]

17       Whitepages is a provider of online directory resources, including its primary consumer-

18 facing website located at www.whitepages.com (the "Whitepages.com Site"). Users of the

19 Whitepages Sites can conduct various types of searches in order to obtain contact information for

20 people and businesses. For example, a user can conduct a "people search" by typing in a person's

21

22

23 [2] Although a court ordinarily will not look beyond the pleadings in resolving a motion to dismiss, a court may consider documents that are integral to or explicitly relied upon in a complaint. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (expressly permitting district court to

24 consider a document integral to the complaint the authenticity of which is unchallenged); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("incorporation by reference doctrine"). In this case, the

25 SAC references, without attaching as exhibits, certain pages of the Whitepages.com Site. Those pages, and the Whitepages.com Site itself are not only integral and relied upon in the SAC, they

26 actually form the basis for all of Mr. Espinosa's claims. Whitepages requests that the Court take judicial notice of certain portions of the Whitepages.com Site, as further identified in the Request for

27 Judicial Notice filed concurrently with the Motion.

28

1  name in order to find addresses and telephone numbers associated with that person.[3]

2  **B.     The Allegations of the Second Amended Complaint**

3         Mr. Espinosa lodged the SAC on January 23, 2015 (Dkt. 8). His complaint alleges privacy

4  violations based on Whitepages' alleged exploitation of unspecified items of Mr. Espinosa's

5  personal information, "including the Plaintiff's name, address and telephone number". (SAC ¶¶ 10.)

6  Other than this passing reference to his basic contact information, Mr. Espinosa does not specify

7  what "personal information" is at issue, nor does he allege what steps he took to maintain the

8  privacy of his personal information. For example, he does not allege that his telephone numbers are

9  unlisted. He also does not allege that he contacted Whitepages, or any other third parties, in order to

10  try to get his listing removed or modified, or that he took advantage of any of the online tools or

11  other means Whitepages makes available for people to accomplish the removal or modification of a

12  listing. Mr. Espinosa merely alleges vaguely that Whitepages exploits his personal information, but

13  this allegation should be viewed against the backdrop of his other allegations, such as the allegation

14  that "Defendants are unregistered agents of foreign governments employed to spy and gather

15  personal information to sell to foreign governments and enemies of the United States of America."

16  (SAC ¶¶ 17.)

17         Mr. Espinosa alleges that he created licensing agreements purporting to govern the use of

18  Mr. Espinosa's personal information. (SAC ¶¶ 7-9.) Mr. Espinosa does not allege that Whitepages

19  agreed to or was even aware of any of his licensing agreements. In fact, in his First Amended

20  Complaint, Mr. Espinosa admitted that Whitepages did not enter into any agreements with him.

21  (FAC ¶¶ 21-23.) Although Mr. Espinosa claims to have given notice to Whitepages that "Plaintiff

22  objected to having his name on Defendants' website" (SAC ¶ 22), he previously admitted that the

23  alleged "notice" amounted solely to "creating… the licensing agreements". (FAC ¶ 19.) And the

24  SAC fails to allege that Whitepages entered into any agreements with him. Mr. Espinosa appears to

25

26  [3] A search on the Whitepages.com Site for "Darrel Espinosa" finds three exact matches, one of

27  whom appears to be the plaintiff. (*See* Request for Judicial Notice at p. 2; McChesney Decl. ¶¶ 3, 4.)
   As is apparent, the listing provides only basic information about Mr. Espinosa that might allow

28  others to locate and contact him.

1    argue that Whitepages had an obligation to inquire as to whether any such agreement existed, and

2    that Whitepages' failure to make any such inquiries was actionable. (SAC ¶ 12.)

3        As a result of Whitepages' conduct, Mr. Espinosa claims that Whitepages "unjustly

4    profit[ed]" from selling his personal information. (SAC ¶ 13.) Mr. Espinosa claims he is entitled to

5    compensatory damages (totaling $3,900,000) from alleged breaches of the licensing agreements

6    along with punitive damages. (SAC ¶¶ 28-30.)

7    **C.    This Court Has Determined That Mr. Espinosa Is a Vexatious Litigant—and Mr.**
     **Espinosa Disobeyed This Court's Order When He Filed This Lawsuit**
8

9        In *Espinosa v. Marshall*, No. CIV S-06-1192 MCE GGH PS (E.D.Ca. 2007) (Dkt. 85,

10   attached as Exhibit C to McChesney Decl.), this court noted that (at that time) Mr. Espinosa had

11   brought "three previous cases… in this court, the last of which found plaintiff to be a vexatious

12   litigant." *Id.* at 1:21-23 (citing *Espinosa v. Wheeler*, Civ. S. 04-0203 MCE GGH PS, Order, filed

13   December 15, 2004). In *Marshall*, this Court reiterated that Mr. Espinosa "clearly qualifies as a

14   vexatious litigant based on his having filed three cases which were adversely decided, his repeated

15   attempts to either re-litigate past decisions or the same issues which were previously fully litigated,

16   and his having filed numerous frivolous motions." *Id.* at 2:13-16. This Court also ordered Mr.

17   Espinosa to comply with pre-filing requirements in the event he chose to file additional lawsuits, as

18   discussed above. (*Espinosa v. Marshall*, Dkt. 92, attached as Exhibit E to the McChesney Decl.)

19   Mr. Espinosa disobeyed a direct order of this Court by failing to comply with those requirements

20   when he initiated this lawsuit.

21                                    **DISCUSSION**

22   **A.    Legal Standard**

23       A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief

24   can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th

25   Cir. 2001). Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal

26   theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

27   *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). While "detailed factual allegations" are

28   not required, a complaint must include sufficient facts to "state a claim to relief that is plausible on

1  its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

2  544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

3  court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

4       For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all

5  allegations of material fact as true and construes the pleadings in the light most favorable to the

6  plaintiffs. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The

7  Court need not, however, accept as true pleadings that are no more than legal conclusions or the

8  "'formulaic recitation of the elements' of a cause of action." *Iqbal*, 556 U.S. at 478 (quoting

9  *Twombly*, 550 U.S. at 555). Mere "conclusory allegations of law and unwarranted inferences are

10  insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*,

11  83 F.3d 1136, 1140 (9th Cir. 1996); *accord Iqbal*, 556 U.S. at 478. Further, the Court need not

12  accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*,

13  234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to  matters of

14  public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment.

15   *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

16
17  **B.**    **Espinosa's Claim for Right of Publicity Fails Because He Does Not Allege any Commercial Use by Whitepages; any such Use is in Any Event Clearly Protected**

18       The elements of the statutory claim for misappropriation of the right of publicity in Cal.

19  Civil Code § 3344 include the common law privacy invasion elements plus a knowing use. *Kirby v.*

20  *Sega of America, Inc.*, 144 Cal. App. 4th 47, 63 (Cal. Ct. App. 2006). The elements of a California

21  privacy invasion claim for misappropriation are: (1) use of the plaintiff's identity; (2) appropriation

22  of the plaintiff's name and likeness to defendant's advantage; (3) lack of consent; and (4) resulting

23  injury. *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417 (Cal. Ct. App. 1983).

24       1.    <u>Mr. Espinosa fails to allege a prima facie claim.</u>

25       In the SAC (as well as the FAC and the original complaint), Mr. Espinosa fails to identify

26  any aspect of his identity that Whitepages uses for a commercial purpose. California law requires a

27  plaintiff to allege a *direct connection* between the defendant's alleged use and the commercial

28  purpose. *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417-18 (*citing Johnson v. Harcourt,*

1  *Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 895 (Cal. Ct. App. 1974)). It is clear that merely

2  listing someone's name and contact information in an online directory does not suffice.

3         In *Johnson*, the defendant re-published a magazine article about plaintiff Johnson as an

4  educational tool in an English textbook. *Id.*, 43 Cal. App. at 895. The court rejected the claim

5  because "[i]t [was] obvious that the article was not a primary reason for the textbook . . . nor was it

6  a substantial factor in the students' purchases of the book." *Id*. Since there was no direct connection

7  between the publisher's use and the commercial purpose, the court affirmed dismissal of the right of

8  privacy claim without leave to amend. *Id*. at 892, 897. Similarly in this case, Mr. Espinosa makes

9  no allegations that would support the notion that Whitepages' publication of his name and

10  telephone number in a directory is a "substantial factor" in the creation of the Whitepages directory

11  or in end users' decision to utilize the Whitepages Site. To the contrary, given that Whitepages

12  makes available a free, online directory, the substantial factor test cannot be satisfied.

13         2.     <u>Any use in a directory must be considered "incidental use".</u>

14         This Court has stated that "'the general rule is that incidental use of a plaintiff's name or

15  likeness does not give rise to liability' under a common law claim of commercial misappropriation

16  or an action under Section 3344." *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1100

17  (E.D. Cal. 2009). "The value of the plaintiff's name is not appropriated by mere mention of it . . .

18  *nor is the value of his likeness appropriated when it is published for purposes other than taking*

19  *advantage of his reputation, prestige, or other value associated with him, for purposes of publicity*."

20  Restatement (Second) of Torts § 652C cmt. d (emphasis added) (cited with favor in *Yeager, id*., and

21   *Perkins v. LinkedIn Corp.*, 2014 U.S. Dist. LEXIS 160381, 64-65 (N.D. Cal. Nov. 13, 2014)).

22         In this case, Mr. Espinosa does not allege that his name (or other "personal information")

23  has any reputation, prestige, or any value on which Whitepages might even conceivably capitalize.

24  He does not explain how his inclusion in an online directory along with millions of other people

25  amounts to use of "Plaintiff's name on the internet to advertise and promote [Whitepages'] products

26  on the internet." (SAC ¶ 20.) There is no realistic scenario in which Whitepages' inclusion of Mr.

27  Espinosa in its online directory might be anything other than incidental, especially considering the

28  fact that Mr. Espinosa's listing is not published at all until someone conducts a relevant search

1    through the Whitepages Site. Even assuming Mr. Espinosa can make allege the elements of a

2    claim—which he cannot—the incidental use exception applies here.

3        3.    Listing Mr. Espinosa's name falls under the public affairs exception.

4    It is squarely in the public's interest to have access to an online directory that allows people to

5    search for contact information, such as the one Whitepages provides. "As has been established in

6    the cases involving common law privacy and appropriation, the public is interested in and

7    constitutionally entitled to know about things, people, and events that affect it." *Dora v. Frontline*

8    *Video, Inc.*, 15 Cal. App. 4th. 536, 545-46 (Cal. Ct. App. 1993). Use of a person's name and

9    likeness for a purpose that "is more than passing interest to some" falls "within the category of

10   public affairs" and "is among the uses exempt from consent" in Section 3344. *Id*. at 546.[4] As set

11   forth above, Mr. Espinosa fails to allege the basic elements of a prima facie claim. Even if he had,

12   however, Whitepages' use of Mr. Espinosa's name and contact information—which is included in a

13   vast database with millions of other people—falls under the public interest exemption.

14   **C.    Espinosa's Second Claim for Violation of Constitutional Privacy Rights Fails Because**
15   **Whitepages' Publication of his Name, Address and Phone Number Is Not Actionable**

16       To state a claim for a violation of the right to privacy under the California Constitution, a

17   plaintiff must allege (1) a legally protected privacy interest; (2) a reasonable expectation of privacy;

18   and (3) conduct that amounts to a serious invasion of the protected privacy interest. *Hill v. Nat'l*

19   *Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37, 26 Cal. Rptr. 2d 834 (Cal. 1994). These threshold

20

21   [4] Indeed, Whitepages' use of publicly available contact information for Mr. Espinosa and others is
     noncommercial speech protected by the First Amendment. The Ninth Circuit addressed the issue of
22   First Amendment protection for a yellow pages directory in *Dex Media W., Inc. v. City of Seattle*,
     696 F.3d 952, 957 (9th Cir. 2012), holding that telephone listings and community information
23   contained in a directory [the Yellow Pages] constitute protected noncommercial speech. Given that
     Whitepages' directory is entitled to First Amendment protection, imposing liability under § 3344
24   would likely run afoul of the First Amendment. *See, e.g., Brayshaw v. City of Tallahassee*, 709 F.
     Supp. 2d 1244, 1248-49 (N.D. Fla. 2010). The court in *Brayshaw* looked at the "true threat" element
25   of constitutionally proscribed speech when evaluating a Florida statute that prohibited the
     publication of police officers' names and addresses. The *Brayshaw* court found the statute
26   unconstitutional, determining that the simple publication of an officer's phone number, address, and
     e-mail address is not in itself a threat or serious expression of an intent to commit an unlawful act of
27   violence. *Id*.

28

1    elements serve to weed out "claims that involve so insignificant or de minimis an intrusion . . . as

2    not even to require an explanation . . . by the defendant." *Loder v. City of Glendale*, 14 Cal. 4th 846,

3    893, 59 Cal. Rptr. 2d 696 (Cal. 1997). In order to be actionable, an invasion "must be sufficiently

4    serious in . . . nature, scope, and actual or potential impact to constitute an egregious breach of the

5    social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37.

6           Accordingly, courts have held that disclosure of information such as unique device

7    identifiers, geolocation data, social security numbers, and names and address information does not

8    constitute an "egregious breach of the social norms" sufficient to support a privacy claim. *See*

9    *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992, 125 Cal. Rptr. 3d 260 (Cal. Ct. App.

10   2011) (address information); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (2012)

11   (device identifier, personal data and geolocation information); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d

12   1121, 1127-28 (N.D. Cal. 2008) (personal information, including social security numbers); *In re*

13   *Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014) ("plaintiffs do not cite, nor has this

14   Court found, any case in the California or federal courts holding that individuals have a legally

15   protected privacy interest or reasonable expectation of privacy in emails generally"); *Low v.*

16   *LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of LinkedIn ID and the

17   URL of the LinkedIn profile page that the user viewed is not the type of information that supports a

18   privacy claim under the California Constitution). *Fogelstrom* is particularly instructive. There, the

19   putative violation involved defendant allegedly acquiring plaintiff's home address and mailing him

20   coupons and other advertisements. *Fogelstrom*, 195 Cal. App. 4th at 992. The court rejected the

21   privacy claim, observing that the complained of conduct was "not an egregious breach of social

22   norms, but routine commercial behavior." *Id*.

23          Espinosa's SAC fails to specify exactly what information Whitepages allegedly disclosed or

24   exploited. Instead, the SAC alleges only that Whitepages exploited "Plaintiff's personal

25   information, including the Plaintiff's name, address, and telephone." SAC at ¶ 10, lns. 18-19. But

26   the law is clear that use or disclosure of basic contact information under the circumstances present

27   here does not suffice to form a privacy claim under the California Constitution. Courts in this

28   district have "consistently refused to characterize the disclosure of common, basic digital

information to third parties as serious or egregious violations of social norms." *In re Google, Inc. Privacy Policy Litig.*, 2014 U.S. Dist. LEXIS 100245, *38 (N.D. Cal. July 21, 2014). Nor does the SAC identify any information beyond name, address and telephone number that Espinosa alleges was improperly disclosed. Rather, the SAC vaguely cites to Whitepages' alleged exploitation of his "personal information," which is insufficient. *Zbitnoff v. Nationstar Mortg. LLC*, No. C 13-05221 WHA, 2014 U.S. Dist. LEXIS 35638, at *4 (N.D.Cal. March 18, 2014) (holding allegations for constitutional privacy claim were conclusory because plaintiff "merely state[d]" defendants disclosed her "private information"); *Scott-Codiga v. County of Monterey*, No. 10-CV-05450-LHK, 2011 U.S. Dist. LEXIS 108721, at *7 (N.D. Cal. Sept. 23, 2011) (dismissing constitutional privacy claim on ground that plaintiff had not "specified the material defendants released to the public in enough detail for the Court to determine whether it might conceivably fall within a recognized privacy interest protected by the [California] constitution" (internal citation omitted)).[5]

## D.      Whitepages is Entitled to Section 230 Immunity

A defendant is entitled to immunity under Section 230 of the Communications Decency Act where: (1) the defendant is a provider of an interactive computer service; (2) the information alleged to be harmful was provided by another information content provider; and (3) the plaintiff seeks to treat the defendant as a publisher. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 548 (E.D. Va. 2008), *aff'd*, 591 F.3d 250 (4th Cir. 2009). Section 230's immunity applies even where the content is provided by a contractor of the online service provider (i.e.,

---

[5] While Mr. Espinosa couches his invasion of privacy claim under the California constitution, courts in other contexts have uniformly held that mere disclosure of contact information cannot form the basis of a privacy violation. *See, e.g., McNutt v. N.M. State Tribune Co.*, 88 N.M. 162, 166 (N.M. Ct. App. 1975) ("an individual's home address is a public fact and . . . its mere publication, without more, cannot be viewed as an invasion of privacy"); *Taylor v. NationsBank N.A.*, 128 Md. App. 414 (Md. Ct. Spec. App. 1999) ("revelation of an unlisted telephone number is unlikely to offend a person of ordinary sensibilities"); *Miller v. Vonage Am., Inc.*, No. 14-CV-379, 2015 U.S. Dist. LEXIS 308, 18 (E.D. Wis. Jan. 5, 2015) ("[plaintiffs] failed to identify an independent duty that was breached by the inadvertent publication of their phone number and address"); Phillip E. Hassman, Annotation, *Publication of Address as well as Name of Person as Invasions of Privacy*, 84 A.L.R.3d 1159 (originally published in 1978) ("the mere publication of a person's address, no matter what the circumstances, could not constitute an invasion of his privacy").

1   pursuant to a contractual relationship). *See Blumenthal v. Drudge*, 992 F. Supp. 44, 51 (D.D.C.

2   1998) (granting judgment on Section 230 grounds, notwithstanding the payment of monies in

3   exchange for the allegedly offensive content). Additionally, even minor changes to the information

4   made by the intermediary do not strip the intermediary of Section 230 immunity. *Fair Housing*

5   *Council of Sa*n *Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170 (9th Cir. 2008) (en

6   banc). Finally, Section 230 protects downstream distribution by the intermediary, even where the

7   intermediary has licensed the content for further distribution. *See Prickett v. Infousa, Inc.*, 561 F.

8   Supp. 2d 646, 651 (E.D. Tex. 2006) (providing user generated content "to other businesses who pay

9   for the license to reproduce the information in their own mediums" does not result in loss of CDA

10  230 protection).

11          There can be no dispute that WhitePages is the provider of an interactive computer service.

12  Most websites are, and the Whitepages.com Site is no exception. Similarly, while the precise

13  contours of Mr. Espinosa's cause of action is unclear, there is no dispute that he seeks to hold

14  Whitepages liable for making available (i.e., publishing) information that he alleges constitutes his

15  "personal information." Whether Mr. Espinosa seeks to hold Whitepages liable for publishing his

16  name and address, or alleges that Whitepages' alleged downstream distribution of this information

17  somehow violates his rights, all of these causes of action are clearly encompassed within Section

18  230's broad immunity. Finally, there is also no dispute that Whitepages' directories are supported

19  by third party information. Another court has found that Whitepages is entitled to Section 230

20  immunity because it makes available information provided by third parties. *Nasser v. Whitepages,*

21  *Inc.*, No.: 5:12cv097, 2013 U.S. Dist. LEXIS 166133, *9 (W.D. Va. Nov. 21, 2013) ("WhitePages,

22  however, has persuasively shown that it receives all of its data from third parties and does not create

23  any content itself"). Mr. Espinosa does not allege to the contrary.

24          Section 230 does not impose on providers of an "interactive computer service" an obligation

25  to monitor or remove "offensive" materials. Quite to the contrary, Courts have consistently held that

26  no such obligation is created by Section 230.  *See Blumenthal,* 992 F. Supp. at 52 ("Congress has

27  conferred immunity from tort liability as an incentive to Internet service providers to self-police the

28  Internet for obscenity and other offensive material, *even where the self-policing is unsuccessful or*

---

1  *not even attempted*") (emphasis added); *Ramey v. Darkside Prods.*, No. 02-730 (GK), 2004 U.S.

2  Dist. LEXIS 10107, at *18 (D.D.C. May 17, 2004) ("even though Defendant does not engage in

3  'Good Samaritan' activities, it still receives full immunity from tort liability under § 230 of the

4  Act"); *Donato v. Moldow*, 374 N.J. Super. 475, 498 (App. Div. 2005) ("the immunity continues to

5  apply even if the self-policing effort is unsuccessful or not even attempted"). It is immaterial

6  whether or not the interactive computer service provider was notified of the "offensive" material.

7  *Zeran*, 129 F.3d at 333 (liability upon notice would defeat the dual purposes advanced by § 230 of

8  the CDA"); *Black v. Google Inc.*, No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905, at *9 (N.D. Cal.

9  Aug. 13, 2010) ("immunity is not vitiated because a defendant fails to take action despite notice of

10  the problematic content"); *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 848 (W.D. Tex. 2007) ("the

11  CDA necessarily protects interactive computer services from liability even after they are notified of

12  an allegedly defamatory or threatening post"). Thus, it is immaterial whether, as Mr. Espinosa

13  alleges, Mr. Espinosa's information could still be accessed through the Whitepages Site after he

14  allegedly notified Whitepages of his objections.

15  Accordingly, Whitepages is entitled to Section 230 immunity for each of Mr. Espinosa's

16  claims.

17  **E.      Espinosa Does Not Allege that Whitepages Agreed to His Licensing Agreement**

18  Mr. Espinosa also alleges that his personal information is subject to a license agreement that

19  he has attached to the SAC as "Plaintiff's Exhibit 1" But he does not allege that Whitepages ever

20  agreed to the terms of this licensing agreement. Nor does he present a signed copy of the agreement

21  for the Court's consideration. Mr. Espinosa's position appears to be that his personal information

22  was subject to a license agreement and by allegedly using this information Whitepages

23  automatically agreed to the license agreement. This is legally untenable.

24  It is hornbook law that a contract requires offer, acceptance, and consideration. Here, all of

25  those elements are lacking. Mr. Espinosa fails to allege that he made any sort of offer to Whitepages

26  or that Whitepages accepted any such offer. Finally, Mr. Espinosa's allegations do not reference

27  any consideration. Consideration requires the conferral of a benefit or the forbearance (of

28  something that the person is legally entitled to do). Mr. Espinosa cannot prevent Whitepages from

1   publishing his name and contact information. Accordingly, even assuming he had offered and

2   Whitepages had agreed to some sort of contractual arrangement—which is not the case—Mr.

3   Espinosa's licensing agreement would fail for lack of consideration. Consequently, his contract-

4   based argument has no merit.

5   **F.        The Court Should Dismiss With Prejudice**

6          The Court should dismiss the SAC with prejudice. A denial of leave to amend is reviewed

7   for abuse of discretion, but where a proposed amendment "would be futile, there is no need to

8   prolong the litigation by permitting further amendment." *Chaset v. Fleer/Skybox Int'l*, LP, 300 F.3d

9   1083, 1088 (9th Cir. 2002). Such is the case here. Because Mr. Espinosa's privacy claims are

10  untenable, barred by the First Amendment, and are ultimately premised on Whitepages' role as a

11  publisher of third party content, he will be unable to overcome the bar posed by CDA § 230. Mr.

12  Espinosa's claims should therefore be dismissed with prejudice. *See*, *e.g.*, *Gavra v. Google Inc.*,

13  Case No.: 5:12-CV-06547-PSG, 2013 U.S. Dist. LEXIS 100127, at *9 (N.D. Cal. July 17, 2013)

14  (rejecting possible amendment as futile); *Dimeo v. Max*, 433 F. Supp. 2d 523, 532 (E.D. Pa. 2006)

15  (rejecting request to amend complaint and noting that proposed claim "would fall to 47 U.S.C. §

16  230(c)(1)").

17                                              **CONCLUSION**

18         Mr. Espinosa does not explain how his personal information might be directly linked to any

19  commercial advantage Whitepages might derive from its publication in an online directory. And as

20  set forth above, Mr. Espinosa's complaint does not allege that Whitepages misappropriated or

21  improperly disclosed the type of personal or intimate information that would form the basis of a

22  privacy claim under the California Constitution. To the contrary, Whitepages is a company that

23  makes available the valuable public service of an online directory at no cost. In this context,

24  Whitepages made available Mr. Espinosa's publicly available contact information. Far from being a

25  privacy violation, Whitepages' display of Mr. Espinosa's contact information is protected under the

26  First Amendment. Further, Mr. Espinosa does not allege that Whitepages signed or was even aware

27  of Mr. Espinosa's alleged license agreement. The license agreement, which purported to allow

28  Whitepages to do something that it was already legally entitled to do, also fails for lack of

consideration.

Mr. Espinosa has a long history of filing frivolous complaints. This case is no exception. But now, Mr. Espinosa has added a direct violation of this Court's previous order in *Espinosa v. Marshall* to his history of abusing the judicial process. Whitepages respectfully requests that the Court dismiss Mr. Espinosa's claims with prejudice.

DATED: February 9, 2015                    Respectfully submitted,


                                           FOCAL PLLC

                                    By: /s/ *Venkat Balasubramani*
                                           Venkat Balasubramani (SBN 189192)

                                           /s/ *Sean M. McChesney*
                                           Sean M. McChesney (admitted *pro hac vice*)

                                           Attorneys for Defendant
                                           WHITEPAGES, INC.

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | The undersigned certifies that on February 9, 2015, the undersigned filed the foregoing |
| 3 | **WHITEPAGES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 4 | **OF MOTION TO DISMISS COMPLAINT** via the Court's CM/ECF system. Additionally, the |
| 5 | foregoing has been served upon plaintiff Darrel L. Espinosa on February 9, 2015 by First Class |
| 6 | Mail, postage prepaid, and is being hand delivered at the following address: |
| 7 | Darrel L. Espinosa |
| 8 | 6759 Harrington Avenue<br>Arbuckle, CA 95912 |
| 9 | |
| 10 | DATED: February 9, 2015 |

/s/ *Sean M. McChesney*
Sean M. McChesney